# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| MICHELLE ANDERSON, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 17-3244-CV-S-BP ) ) |
| FORD MOTOR COMAPNY, | ) ) |
| Defendant. | ) ) ) |

## ORDER

This matter comes before the Court on Defendant Ford Motor Company's, ("Ford"), Motion to Dismiss. (Doc. 16.) Ford argues that certain aspects of Plaintiff's claims should be dismissed because she lacks standing to assert them. In addition, Ford argues that Counts II and III should be dismissed for failure to state a claim. For the following reasons, Ford's Motion is **DENIED**.

## I. BACKGROUND

The Complaint alleges the following facts, all of which are deemed to be true and construed in the light most favorable to Plaintiff. Ford manufactures, markets, and distributes automobiles in the United States. Starting in the 2007 model year, Ford introduced vehicles with expanded sunroofs known as panoramic sunroofs. Panoramic sunroofs are made of tempered or laminated glass, and Ford is alleged to have used tempered glass. (Doc. 1, ¶ 24.) Ford also used ceramic paint or enamel on the glass prior to tempering. (Doc. 1, ¶ 27.) Plaintiff alleges that the use of ceramic paint or enamel in panoramic sunroofs make them prone to spontaneously bursting. (Doc. 1, ¶¶ 28-29, 32.) Plaintiff further alleges that Ford was aware of this defect in its panoramic sunroofs based on a number of studies on panoramic roofs and consumer complaints

of panoramic roofs spontaneously shattering. (Doc. 1, ¶¶ 33-45, 47-50; *see also* Doc. 1, ¶ 30-31.)

In January 2016, Plaintiff purchased a new 2016 Ford Escape from Friendly Ford in Springfield, Missouri. Plaintiff's Escape included a panoramic sunroof. Plaintiff alleges she researched the vehicle before purchasing it and that the panoramic sunroof was a "huge selling point" in her buying decision. (Doc. 1, ¶ 70.) On February 7, 2017, Plaintiff was driving on I-44 East near Springfield when she alleges she heard what sounded like a shotgun being fired. Thereafter, Plaintiff discovered a hole in the sunroof as well as shattered glass inside the vehicle. Plaintiff took the vehicle to Friendly Ford to have the sunroof repaired, but the dealer told her that the sunroof was not covered by the warranty. Plaintiff then paid to have the sunroof replaced. (Doc. 1, ¶¶ 72-73.) Plaintiff asserts that she would not have purchased the vehicle or would have paid substantially less given this defect. (Doc. 1, ¶ 74.)

Count I asserts a breach of express warranty on behalf of a nationwide class, or alternatively on behalf of a Missouri class. Count II asserts fraudulent concealment on behalf of a nationwide class, or alternatively on behalf of a Missouri class. Count III asserts violations of the Missouri Merchandising Practices Act, ("MMPA"), on behalf of a Missouri class. Count IV alleges breach of implied warranty of merchantability on behalf of a Missouri class. All four counts assert claims on behalf of purchasers of sixteen Ford vehicles that are sold with panoramic sunroofs.

Ford first argues that Plaintiff does not have standing to pursue claims concerning the fifteen vehicle models she did not purchase. Ford then argues that Counts II and III should be dismissed for any of three independent reasons: (1) Plaintiff has not alleged an actionable omission, (2) Ford did not have a duty to disclose information to Plaintiff, or (3) the claims are

barred under Missouri's economic loss doctrine. Plaintiff argues that the standing argument is more appropriately considered at the class certification stage and that Counts II and III properly state causes of action for concealment and violation of the MMPA. The Court resolves these arguments below.

## II. DISCUSSION

### A. Standing

Article III of the United States Constitution grants federal courts limited jurisdiction to decide "cases and controversies." To satisfy this jurisdictional standing requirement, a plaintiff must establish (1) an injury in fact, which is (2) fairly traceable to the defendant's conduct, and which (3) will likely be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-181 (2000). In a class action, the plaintiff seeking to represent a class must establish that she, personally, has standing to bring the cause of action. If the plaintiff cannot maintain the action on her own behalf, she may not seek such relief on behalf of the class. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Ford argues that Plaintiff lacks standing to assert claims as to the fifteen vehicle models she did not purchase because she suffered no loss as to those vehicles. Plaintiff essentially argues that she can represent a class of consumers who bought the panoramic sunroof. The Court agrees that there is a factual dispute as to whether the "product" at issue is the panoramic sunroof or the car. And, there is an additional dispute as to whether the panoramic sunroofs for all sixteen models are sufficiently similar, such that Plaintiff "bought" the same sunroof as those who bought one of the other fifteen Ford models. Ford may be correct, but the Court cannot resolve this dispute at this stage of the case. Moreover, even if the Court later determines that Ford is correct and Plaintiff can assert claims with respect to the Ford Escape only, the matter

3

may be more efficiently resolved at the class certification stage by limiting the class definition. For these reasons, Ford's request to dismiss all claims related to the other fifteen models is denied.

### B. Failure to State a Claim[1]

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the complaint fails to state a claim upon which relief can be granted. *Cook v. ACS State & Local Solutions, Inc.*, 663 F.3d 989, 992 (8th Cir. 2011); *see also* Fed.R.Civ.P. 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). The Complaint must allege facts sufficient to "state a claim for relief that is plausible on its face." *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). To sufficiently plead a plausible claim, the factual content of the claim must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Horras v. American Capital Strategies*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In ruling on a motion to dismiss, the "court accepts as true all factual allegations but is not bound to accept as true a legal conclusion couched as a factual allegation." *Cook*, 663 F.3d at 992. Finally, the Court must construe "all reasonable inferences in favor of the non-moving party." *Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012).

#### *1. Duty*

Fraudulent concealment is "based on the misrepresentation of a material fact by silence." *Zubres Radiology v. Providers Ins. Consultants*, 276 S.W.3d 335, 340 (Mo. Ct. App. 2009) (citation omitted). To prove a claim for fraud in Missouri, a plaintiff must show:

> (1) a false material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the

---

[1] Ford's arguments for dismissing Counts II and III are the same, so there is no need for the Court to determine whether or to what extent Plaintiff's MMPA and fraudulent concealment claims are coextensive.

4

> hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury.

*Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571, 580 (Mo. Ct. App. 2000) (citation omitted). In a case of fraudulent concealment, "a party's silence in the face of a legal duty to speak replaces the first element: the existence of a representation." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765-66 (Mo. 2007) (en banc); *see also Tension Envelope Corp. v. JBM Envelope Co.,* 876 F.3d 1112, 1120 (8th Cir. 2017). However, as *Hess* suggests, silence alone is insufficient: "before silence can amount to a representation upon which another party may rely, there must be a duty to speak." *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. 1993) (en banc) (citation omitted); *see also Hess,* 220 S.W.3d at 765-66.

Whether a duty to speak exists depends on the nature of the transaction and other facts of the particular case. *E.g., Hess,* 220 S.W.3d at 765. One situation in which there is a duty to speak is when "one of the parties has superior knowledge not within the fair and reasonable reach of the other party." *Zubres Radiology*, 276 S.W.3d at 340; *see also White v. Bowman,* 304 S.W.3d 141, 147-150 (Mo. Ct. App. 2009). Plaintiff alleges that Ford had superior knowledge of the panoramic sunroof's defect and that the knowledge was not within Plaintiff's reach. These allegations are sufficient to state the existence of a duty under Missouri law requiring Ford to disclose its knowledge of the sunroof's defective nature.

Ford cites to three cases from the Eastern District of Missouri to argue that a manufacturer does not owe an end-purchaser a duty to disclose absent pre-sale communications or dealings, even when the manufacturer has superior knowledge. *Flynn v. CTB, Inc.,* 2013 WL 28244, at *8 (E.D. Mo. Sept. 28, 2015); *In re General Motors Corp. Anti-Lock Brake Products Liability Litigation,* 966 F. Supp. 1525, 1535 (E.D. Mo. 1997); *Garrett v. Cassity,* 2011 WL

5

3235633, at *7 (E.D. Mo. July 28, 2011). However, the Court concludes that these cases do not stand for the broad proposition that, as a matter of law, a manufacturer does not have a duty to disclose to an end-purchaser. Moreover, these cases are distinguishable. In *Flynn,* the plaintiffs did "not allege that they had any pre-sale dealing or communications with defendant." *Flynn,* 2013 WL 24244, *3. Here, Plaintiff alleges the existence of pre-sale dealing in the form of advertising and brochures. (Doc. 1, ¶¶ 20-21.)[2] *In re General Motors* relies on Florida and Alabama law, which require privity of contract or proof of an "artifice or trick" before a duty to disclose arises. 966 F. Supp. at 1535-36. Missouri law is different. *See White,* 304 S.W.3d at 147-150 (privity of contract between the parties is not an element of fraudulent concealment). Finally, in *Garrett* the court cites to only one Missouri case – *Hess* –which does not stand for the proposition that a defendant must be a party to a transaction in order for a plaintiff to assert fraudulent concealment. There was a contractual relationship in *Hess,* but the Missouri Supreme Court did not state that such a relationship was required before a duty to disclose exists. Thus, these cases do not support Ford's argument that a manufacturer cannot owe an end-purchaser a duty to disclose material facts.

Ford also argues that Plaintiff did not exercise ordinary diligence in the purchase of her 2016 Escape. Plaintiff pled that she researched the vehicle before purchasing it. Plaintiff also asserted that had she known about the defect she would not have purchased the vehicle or would have paid substantially less. Plaintiff's investigative diligence is a question of fact and thus not

---

[2] Ford does not discuss whether these communications are sufficient to establish a relationship that could give rise to a duty to disclose; instead, Ford denies the existence of such communications. (Doc. 30, p. 10.) However, the Court must accept the Complaint's allegations, and therefore must reject Ford's claim that it made no statements so there cannot be a duty. This also means that this Order should not be construed as holding that Ford's communications *were* sufficient to give rise to a duty; all that the Court has addressed is the specific argument raised by Ford.

6

appropriate for resolution on a motion to dismiss. *See Hess,* 220 S.W.3d at 766; *Richards v. ABN AMRO Mortg. Group, Inc.,* 261 S.W.3d 603, 611 (Mo. Ct. App. 2008).

Finally, Ford argues that the Complaint does not specifically allege that it had knowledge of two particular facts: the December 2012 Wall Street Journal article and a 2013 article written by the Korea Automobile Testing & Research Institute, ("KATARI"). However, the Complaint, taken as a whole, sufficiently alleges Ford's superior knowledge.

### *2. Actionable Omission*

Ford next argues that the omissions Plaintiff has described are not actionable. First, Ford argues that when a plaintiff alleges that a manufacturer knew a part would break during the warranty period, the only remedy available is provided by the warranty. Ford supports this proposition by citing to *Owen v. General Motors Corp.,* 2007 WL 172355, at *4 n.4 (W.D. Mo. Jan. 18, 2007). However, the plaintiff's claim in *Owen* was that General Motors had fraudulently concealed that its windshield wiper blades were prone to fail *after* the warranty had expired. Thus, the Court's statement that a manufacturer's knowledge that a part would fail *within* the warranty period could not form the basis of a fraudulent concealment claim is dicta. Second, Ford argues that the fact that it did not notify purchasers of consumer complaints does not amount to an omission of a material fact. Ford, however, misapprehends the Complaint. Plaintiff is not alleging that Ford's omission is the mere failure to disclose that customers reported that their sunroofs shatter. Instead, Plaintiff argues that the consumer complaints are some of the facts that put Ford on notice of the defective panoramic sunroofs.[3]

---

[3] Moreover, the nature of the fact allegedly concealed in this case is markedly different from the fact allegedly concealed in *Owen*. In *Owen*, the manufacturer did not tell the consumer of its "unremarkable knowledge that a windshield wiper motor guaranteed for three years might be prone to failure due to fatigue . . . ." *Owen v. General Motors Corp.,* 533 F.3d 913, 920 (8th Cir. 2008). Here, the concealed fact is that a glass sunroof is prone to spontaneously break for no reason – hardly an "unremarkable" fact.

7

### *3. Economic Loss Doctrine*

Finally, Ford argues that Counts II and III are barred by the economic loss doctrine. Ford contends that Missouri courts prohibit tort actions for injury that is purely economic. A review of the cases confirms that in Missouri the economic loss doctrine precludes tort claims arising from the sale of defective products where there has been no personal injury or damage. *See Wilbur v. Waggoner Equip. & Excavating Co. v. Clark Equip. Co.,* 668 S.W.2d 601, 603 (Mo. Ct. App. 1984); *Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co.*, 703 S.W.2d 901, 903 (Mo. 1986) (en banc); *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 198 (8th Cir. 1995). However, claims that a plaintiff was fraudulently induced to enter the contract are widely interpreted to present an exception to the economic loss doctrine. *See AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998); *O'Neal v. Stiffel, Nicolaus & Company, Inc.*, 996 S.W.2d 700, 702 (Mo. Ct. App. 1999).

Ford nonetheless argues that the economic loss doctrine applies to Plaintiff's fraudulent inducement claim because the misrepresentation "concerns the quality or character of the goods sold." (Doc. 17, p. 15) (*quoting Flynn v. CTB, Inc.,* 2015 WL 5692299, at *12 (E.D. Mo. Sept. 28, 2015)). However, claims about the quality of goods sold may fall within the fraudulent inducement exception if they are nevertheless independent of the contract formed. As explained in *R.W. Murray, Co. v. Shatterproof Glass Corp*., 697 F.2d 818 (8th Cir. 1983), "claims based on misrepresentation or fraud are distinct from and contain different elements than claims grounded on breach of warranty or contract," but "under Missouri law the same set of operative facts may give rise to different causes of action." *Id.* at 831.

Plaintiff has pleaded that Ford had reason to know about the issues with the panoramic sunroof and that the problem could not timely be known by Plaintiff. Plaintiff also alleges she

would not have entered into the contract, had she known of the defect. Arguably, this claim is based on conduct that preceded the formation of the contract. Thus, given the stage of the litigation it is premature to dismiss Plaintiff's fraudulent concealment claim.

### III. CONCLUSION

Ford's arguments regarding Plaintiff's ability to assert claims regarding panoramic sunroofs in vehicle models she did not purchase cannot be properly evaluated at this time. The arguments Ford has raised to support dismissal of Counts II and III are rejected. Accordingly, Ford's Motion to Dismiss, (Doc. 16), is **DENIED.**

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

DATE: